**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

JORGE ARANETA and STELLA ARANETA,

              Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A.,

              Defendant.

No. 1:22-cv-02346 (NRB-OTW)

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT IN PART**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................2

PRELIMINARY STATEMENT ......................................................................................1

BACKGROUND AND PROCEDURAL HISTORY ......................................................2

STATUTORY FRAMEWORK ......................................................................................3

ARGUMENT ..................................................................................................................5

    I.       NO EXPRESS RIGHT OF ACTION FOR LESSEES IS CONFERRED BY BANKING LAW SECTION 335 ..................................................................6

    II.      LIKEWISE, NO IMPLIED RIGHT OF ACTION FOR LESSEES IS CONFERRED BY BANKING LAW SECTION 335 ...........................................7

        1.      Although Deposit Box Renters May Derive a Benefit from Section 335, Deposit Box Renters Are Not the Class for Whose Particular Benefit Section 335 Was Enacted ...................................................................7

        2.      A Private Right of Action Would Not Promote Section 335's Legislative Purpose ....................................................................................15

        3.      A Private Right of Action Would Be Not Be Consistent with the Legislative Scheme ...................................................................................17

CONCLUSION ..............................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

Page(s)

## CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................5

*Bellikoff v. Eaton Vance Corp.*,
481 F.3d 110 (2d. Cir 2007)....................................................................................7

*Boutary v. City of New York*, No. 1:18-CV-3996 (ARR) (JO), 2018 U.S. Dist. LEXIS
216238 (E.D.N.Y. Dec. 26, 2018) ..................................................................14

*Caruso v. HSBC Private Bank*,
2015 N.Y. Misc. LEXIS 1530 (N.Y. Sup. Ct. Apr. 29, 2015).........................19

*Cruz v. TD Bank, N.A.*,
22 N.Y.3d 61 (2013)...................................................................................17, 18

*Davis v. Citibank, N.A.*,
116 A.D.3d 819 (2d Dep't 2014).........................................................................9

*Flagstar Bank, FSB v. State*,
114 A.D.3d 138 (2d Dep't 2013).....................................................................8, 14

*Grimes v. Fremont General Corp.*,
933 F. Supp. 2d 584 (S.D.N.Y. 2013)................................................................19

*Haar v. Nationwide Mutual Fire Insurance Co.*,
34 N.Y.3d 224 (2019) .............................................................................7, 16, 17

*Harris v. Mills*,
572 F.3d 66 (2d Cir. 2009)....................................................................................5

*Hutter v. Countrywide Bank, N.A.*, No. 09-cv-10092 (NSR),
2015 U.S. Dist. LEXIS 122882, at *34 (S.D.N.Y. Sept. 14, 2015)..................20

*Jordan v. Chase Manhattan Bank*,
91 F. Supp 3d 491 [SDNY 2015] .........................................................................7

*Konkur v. Utica Academy of Science Charter School*,
38 N.Y.3d 38 (2022) ..........................................................................................15

*Milligan v. CCC Information Services Inc.*,
    920 F.3d 146 (2d Cir. 2019), *report and recommendation adopted*, 2018 U.S.
    Dist. LEXIS 59963 (E.D.N.Y. Mar. 31, 2018), *aff'd sub nom. Milligan v. CCC
    Info. Servs. Inc.*, 920 F.3d 146 (2d Cir. 2019) ..................................................16

*Negrin v. Norwest Mortgage, Inc.*,
    263 A.D.2d 39 (2d Dep't 1999) ......................................................................19

*Ng v. HSBC Mortg. Corp.*, No. 07-CV-5434 (RRM) (VVP),
    2009 U.S. Dist. LEXIS 125711, at *52 (E.D.N.Y. Dec. 15, 2009), *report and
    recommendation adopted*, No. 07-CV-5434 (RRM)(VVP), 2010 U.S. Dist.
    LEXIS 40109 (E.D.N.Y. Mar. 10, 2010) ..........................................................19

*Payne v. White*,
    101 A.D.   (3d Dep't 1984) ..............................................................................19

*Rhodes v. Herz*,
    84 A.D.3d 1 (1st Dep't 2011) ......................................................................15, 17

*Rubman v. Osuchowski*,
    163 A.D.3d 1471 (4th Dep't 2018) ....................................................................7

*Sheehy v. Big Flats Community Day, Inc.*,
    73 N.Y.2d 629 (1989) ..................................................................................7, 17

*Uhr v. East Greenbush School District*,
    94 N.Y.2d 32 (1999) ........................................................................................15

*Wenig Saltiel, LLP v. Specialized Loan Servicing, LLC*,
    68 Misc. 3d 6..........................................................................................8, 9, 12

## STATUTES

N.Y. Banking Law § 6-l...........................................................................................6, 19

N.Y. Banking Law § 9-b..............................................................................................18

N.Y. Banking Law § 335(4) ........................................................................................17

N.Y. Banking Law § 337 .............................................................................................18

N.Y. Banking Law § 338 ..................................................................................11, 12, 13

N.Y. Banking Law §§ 44, 44-a................................................................................4, 18

N.Y. Ins. Law § 2502(a)(2).............................................................................................8

## PRELIMINARY STATEMENT

Plaintiffs Jorge and Stella Araneta ("Plaintiffs") assert a claim under Section 335 of the New York Banking Law, which grants a bank leasing safe deposit boxes certain "remedies" in the event of lessee's non-payment, such as the remedy of opening the box upon meeting certain notification and safekeeping conditions. According to plaintiffs, Section 335 actually imposes privately enforceable notification and safekeeping "requirements" on a bank seeking to open a box, and are suing defendant JPMorgan Chase Bank, N.A. ("Chase") for purported violations of these "requirements."

Plaintiffs misread the language and legislative history of Section 335, which does not grant lessees a private right of action. Section 335 emerged at a time when contracts governing safe deposit arrangements were less common. Lessees were defaulting on their box payments, and questions arose as to how those defaulted or abandoned boxes, and their contents, could be managed efficiently by safe deposit companies. A set of statutory safe harbor remedies for those companies evolved over time to provide a remedy and certainty to safe deposit operators who found themselves in those situations. Section 335 codifies those remedies for lessors.

Consistent with its history and purpose, Section 335 does not—either expressly or by implication—grant lessees of boxes a private right of action. There are some express causes of action under the New York Banking Law, but the text of Section 335 is by no means one of them, or even vaguely similar to any of them. And where, as here, the specific statute (Section 335) does not explicitly provide for a cause of action, the presumption is that the legislature did not intend to imply one. Review of the statutory text, broader statutory framework, and the legislative history all confirm the same: There is no implied private right of action under Section 335.

*First*, an implied right would be grossly inconsistent with the express and longtime right of deposit box operators to negotiate the terms of a lease through contract, including in ways that modify or otherwise depart from the provisions of Section 335.  Section 335 itself, surrounding statutory provisions, and the relevant legislative history all expressly support this broad right to contract.  Therefore, Section 335 does not impose mandatory—much less privately enforceable—obligations on safe deposit box operators.

*Second*, Section 335 does not satisfy any, let alone all three, prerequisites to an implied right of action.  Because a private right would interfere with the right to contract, it would create the possibility of deposit box operators violating Section 335 while complying with their agreed-upon contracts with customers.  This unintended consequence, along with the fact that the Banking Superintendent has enforcement powers in this area, render a private right inconsistent with the legislative scheme.  Moreover, as the statutory text and legislative history make clear, Section 335 was enacted to provide a safe harbor for lessors rather than a benefit to lessees.  It would confound the statutory scheme if a provision designed to enable lessors to minimize litigation risk were to be construed as an invitation to private litigation.

For these reasons and those elaborated below, plaintiffs' claim based on Section 335 should be dismissed.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs initiated this action on March 22, 2022, bringing claims for conversion, negligence, gross negligence, breach of bailment agreement, and breach of implied bailment agreement, in connection with Chase's alleged handling of plaintiffs' safe deposit boxes.  (ECF No. 1.)  Chase answered the Complaint on April 22 (ECF No. 11), then on May 13, plaintiffs

filed their First Amended Complaint, adding a purported cause of action for violations of New York Banking Law Section 335 (ECF No. 17, ¶¶ 22-30).

Chase filed a pre-motion letter seeking to dismiss the Section 335 claim only and noting that this Court had previously found no authority for the proposition that Banking Law Section 335 creates a private cause of action for a plaintiff (ECF No. 19 (citing *Helfer v. JPMorgan Chase Bank, N.A.*, 1:19-cv-00008 (NRB), 2020 WL 6823240, at *6 n.4 (S.D.N.Y. Nov. 20, 2020))). In response, plaintiffs argued that Section 335 imposes specific, statutory notice and holding period obligations on Chase and that, at a minimum, an implied private right of action under Section 335 exists. (ECF No. 20). Following a telephonic conference, this Court permitted Chase to brief the motion.

## STATUTORY FRAMEWORK

Article VIII-a of the New York Banking Law spans seven sections (Sections 332 to 338) and is titled "Safe Deposit Business." Section 332 defines a safe deposit box "lessor" to include banking organizations and national banking associations. Section 333, titled "Access to Safe Deposit Boxes by Certain Fiduciaries," provides that, for boxes rented by a fiduciary, "the lessor may, except as otherwise expressly provided by the terms of the lease," allow certain other fiduciaries to access the box.

Section 335 sets forth a safe harbor procedure that may be followed by a lessor seeking to open a safe deposit box. The provision is titled "Special Remedies Where Rental of Safe Deposit Box Is Not Paid or When Safe Deposit Box Is Not Vacated on Termination of Lease." It begins with the following introductory phrase: "Every lessor shall be entitled to the following special remedies:" Subsection 1(a) provides "the lessor may," if the rental fee has not be paid for one year, send a notice to the lessee requesting payment within thirty days. Subsection 1(b)

provides, if the amount due is not paid on time, "the lessor may, in the presence of a notary public . . . cause such safe deposit box to be opened, and the contents thereof, if any, to be removed and inventoried."  If the lessor elects to proceed with steps (a) and (b) (to drill the deposit box open), subsection (c) provides for a follow-up notice, and subsections (d) and (e) provide for an optional auction process the lessor can pursue to recoup its costs.

Section 335(5) further clarifies that the above procedure is an optional remedy and safe harbor procedure: "The provisions of [Section 335] shall not preclude any other remedy by action or otherwise for the enforcement of the claims of the lessor against the person to whom a safe deposit box shall have been let, nor bar the right of the lessor to recover the debt due in any other lawful manner."  A nearly identical non-exclusive remedy provision is contained in Section 336, which is titled "Special Remedies Where Property Is Deposited."

Section 337, titled "Sale of Safe Deposit Business," provides that with the approval of the superintendent of the New York State Banking Department, an institution may sell its safe deposit business to another institution (with all of its leases assumed by the purchasing institution, except for any leases terminated by customers upon notice of the upcoming sale). Last, there is Section 338, titled "Notice to Renters of Safe Deposit Boxes Regarding Insurance": At the time of rental, each customer receives a copy of the safe deposit box rental agreement and, also on each customer bill thereafter, receives a notice about securing their own insurance.  *Id.*

These Safe Deposit Box provisions comprise a single Article of the multi-Article New York State Banking Law.  The Banking Law contains a variety of Articles, including on supervisory reporting, violations, and penalties.  *See, e.g.*, N.Y. Banking Law §§ 44, 44-a.

## ARGUMENT

Section 335 does not support an express or implied private right of action for lessees of safe deposit boxes.  As there is plainly no express cause of action for lessees in the text of the statute, plaintiffs must not only overcome the general presumption <u>against</u> finding implied rights, but they must also establish that Section 335 satisfies all three factors necessary to find an implied right of action.  Plaintiffs can satisfy none of the three.  First, although safe deposit box renters may derive a benefit from aspects of the statute, lessors (not lessees) are the class for whose particular benefit Section 335 was created.  Second, implying a private right would not promote the legislative purpose behind Section 335.  And third, an implied right is not consistent with the legislative scheme.  In addition, based on counsel's survey of the legal authority, no court has found a private right of action implied by the New York Banking Law, much less by its safe deposit safe harbor.  There is no reason for this Court to change that uniform course, and plaintiffs' claim under Section 335 should be dismissed.

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When ruling on a Rule 12(b)(6) motion, courts must take the factual allegations in a complaint as true and draw all reasonable inferences in the plaintiffs' favor.  *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). To survive the motion to dismiss, the plaintiffs' allegations must "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A court, however, need not accept as true either legal conclusions," *Iqbal*, 556 U.S. at 678, or conclusory factual allegations, *Harris*, 572 F.3d at 72.

## I.    NO EXPRESS RIGHT OF ACTION FOR LESSEES IS CONFERRED BY BANKING LAW SECTION 335

Neither Section 335 nor any other provision of the New York Banking Law creates an express private cause of action for lessees of safe deposit boxes.  The drafters of the New York Banking Law are aware of how to provide express rights of action, including express private rights of action.  *See, e.g.*, N.Y. Banking Law § 6-l ("The attorney general, the superintendent, or any party to a high-cost home loan may enforce the provisions of this section. . . . A private action . . . must be commenced within six years . . . ."); *id.* § 200-b ("An action or special proceeding against a foreign banking corporation may be maintained by a resident of this state for any cause of action."); *id.* § 676 ("No such banking organization . . . shall interpose the defense, in an action for recovery by a depositor of money paid upon an unauthorized signature . . . ."); *id.* § 7017 (noting "an action may be brought against one or more directors or officers of a corporation" for corporate misconduct).

In Section 335, however, the drafters of the Banking Law conspicuously included no such provision.  Section 335 simply includes such statements as "the lessor may, at the expiration of such period, send to the lessee . . . a notice in writing," "[s]uch contents shall be retained by the lessor for safekeeping for a period of not less than two years unless sooner removed by the lessee," and "provided a notice of the time and place of sale has been published." None of these statements refers to any possible "action" or otherwise contemplates (on its face or based on Chase's review of legislative history) any litigation by lessees to enforce any aspect of Section 335.

## II.   LIKEWISE, NO IMPLIED RIGHT OF ACTION FOR LESSEES IS CONFERRED BY BANKING LAW SECTION 335.

Nor does Section 335 confer on plaintiffs a right of action by unstated implication.

"Generally, 'where a statute does not explicitly provide for a private right of action, 'we begin

with the presumption that [the legislature] did not intend one' (*Jordan v. Chase Manhattan*

*Bank*, 91 F. Supp 3d 491, 501 [SDNY 2015], quoting *Bellikoff v. Eaton Vance Corp.*, 481 F.3d

110, 116 [2d Cir 2007]), and the party seeking the private remedy has the burden of establishing

that one was intended (*see id.*)."  *Rubman v. Osuchowski*, 163 A.D.3d 1471, 1474 (4th Dep't

2018) (alteration in original).  To meet that burden, the plaintiff must prove three distinct

elements: (1) the plaintiff must be "one of the class for whose particular benefit the statute was

enacted"; (2) recognition of a private right of action must "promote the legislative purpose"; and

(3) creation of such a right must "be consistent with the legislative scheme."  *Haar v. Nationwide*

*Mut. Fire Ins. Co.*, 34 N.Y.3d 224, 228-29 (2019) (citing *Sheehy v. Big Flats Cmty. Day, Inc.*, 73

N.Y.2d 629, 633-34 (1989)).

Here, Section 335 satisfies none of the factors, let alone all three.  Accordingly, Section

335 does not imply a private right of action, and plaintiffs' claim thereunder must be dismissed.

### 1.   Although Deposit Box Renters May Derive a Benefit from Section 335, Deposit Box Renters Are Not the Class for Whose Particular Benefit Section 335 Was Enacted.

Plaintiff lessees are not members of the class for whose "particular benefit" Section 335

was enacted.  The "particular benefit" test has a well-established, narrow meaning:  If the class to

which the plaintiffs belong is not the sole, or at least not the primary, class for whose benefit the

statute under which the implied private right of action is asserted was enacted, the plaintiffs are

not "one of the class for whose particular benefit the statute was enacted"—even if the statute

expressly directed the defendant to take (or not take) a certain action and even if defendant's

compliance with that directive could have obviated the need for litigation.  *See Flagstar Bank, FSB v. State*, 114 A.D.3d 138, 139-40, 144 (2d Dep't 2013); *Wenig Saltiel, LLP v. Specialized Loan Servicing, LLC*, 68 Misc. 3d 6, 8-10 (App. Term 2d Dep't, 11th and 13th Jud. Dists. 2020).

*Flagstar* well illustrates the narrow construction of the "particular benefit" test.  There, the statute provided that "the clerk shall docket the judgment in the same manner . . . as a judgment entered in the supreme court within the county."  *Flagstar*, 114 A.D.3d at 144 (citation omitted).  The County Clerk, however, failed to docket the judgment accurately, which allowed the judgment debtor to convey real property free of (what should have been) a judgment lien.  *Id.* at 139.  The Clerk's failure allegedly frustrated the creditor's ability to execute on the judgment, and the creditor later sued the State of New York for its Clerk's negligence.  *Id.* at 140-41.  The Appellate Division held, "while judgment creditors undoubtedly stand to benefit from [the statutes], they do not constitute the sole class to benefit from the docketing of judgment liens."  *Id.* at 145.  The panel reasoned that docketing judgments also is of particular benefit to prospective purchasers of real property, to notify them of any judgment liens.  *Id.* at 145-46.

Similarly, in *Wenig*, the statute provided that banking institutions "shall not" furnish any services "on the condition or requirement that the customer obtain insurance from such institution, its affiliate or subsidiary, or a particular insurer, agent, or broker."  N.Y. Ins. Law § 2502(a)(2).  The defendants, however, allegedly did just that.  *Wenig*, 68 Misc. 3d at 7.  The Appellate Term held that, "[a]lthough purchasers of real property from banks may derive a benefit from this provision insofar as it tends to ensure that they have the right to purchase insurance from the agent or company of their choice, [purchasers] do not constitute the sole class for whose particular benefit the provision was enacted."  *Id.* at 9.  The panel reasoned that the statute was enacted, with regards to the sale of insurance, "to address the longstanding conflicts"

and "ensure a level playing field" between the banking and insurance industries, and, "[t]hus, the legislative history reveals that the provision was intended to protect, among others, the insurance industry." *Id.* Because plaintiffs failed to satisfy the first factor, the panel held, "we must conclude, regardless of our determination of the other two factors, that there is no implied right of action." *Id.*[1]

Here, putting aside any applicable contract, Section 335(1) provides the lessor with the ability to drill open a deposit box to make itself whole for a past-due fees, provided it takes certain steps:  send and publish certain notices, open and inventory the box in a certain manner, and safekeep the property for a certain period of time.  While there are certain safeguards for lessees and a lessee may benefit (such as by having a chance to cure delinquent payments or by minimizing the risk of damage to their stored property), the thrust of the statutory text and the legislative history is (and always has been) to support safe deposit operators—for example, by maintaining the operator's right to contract with lessees as the business sees fit, by supporting fluid and economical safe deposit operations, and by otherwise minimizing opportunities for confusion and litigation.  As the New York Banking Department put it, the safe deposit statutory framework reflects "certain optional privileges and remedies" for the safe deposit box operators that "do not limit or restrict the operation of safe deposit business in any way" and that are "designed for the protection of safe deposit business and the simplification of what otherwise would be doubtful and obscure."  Letter from NY Banking Department, Bill Jacket, L. 1962, Ch. 52, at PDF 19 (emphasis added).

---

[1] The reasoning of *Davis v. Citibank, N.A.*, 116 A.D.3d 819, 822 (2d Dep't 2014) also is similar—even substantial benefit to a plaintiff class is not necessarily enough.  The statute in *Davis* expressly stated its purposes were "to restore liquidity and stability to the financial system of the United States," including by "protect[ing] home values" and "preserv[ing] homeownership," *id.*, and the Home Affordable Modification Program was enacted pursuant to that statute.  Nonetheless, the Appellate Division held that this program, while it may benefit struggling homeowners, was also intended to incentivize loan servicers to reduce monthly payments and thus did not satisfy the first prerequisite to the implied right of action.  *Id.* at 822-32.

This formulation finds direct support across Section 335's text.  Section 335, for example, begins with, "[e]very <u>lessor</u> shall be entitled to the following special remedies . . ." N.Y. Banking Law § 335 (emphasis added).  In addition, Section 335(2) clarifies that lessors may sell any bonds, stocks, or other securities or properties within deposit boxes "regardless of whether or not it shall appear from such securities or properties that the lessee of the safe deposit box possesses title to or any interest in such securities, or other properties, or power to transfer such title or interest."  *Id.* § 335(2).  And Section 335 closes by stating: "this section shall not preclude any other remedy . . . for the enforcement of the <u>claims of the lessor</u> against the person to whom a safe deposit box shall have been let . . . ."  *Id.* § 335(5) (emphasis added).[2]

The legislative history of Section 335 also confirms that the statute was <u>not</u> intended to enumerate rights of lessees against lessors—and, on the contrary, sought to preserve safe deposit operators' right to contract with customers on terms that differ from the statute.  In 1911, the New York Attorney General advised that parties could agree on terms governing their safe deposit boxes, including terms allowing a box to be drilled earlier than the time provided by the statute.  Opinions of the Attorney General, 1911 NY Att'y Gen. Rep. & Op. 3 (1911), at 154-55.  A commentator in 1929 likewise observed that the statute was intended "to furnish a remedy in case of the absence of a contract, but not to limit the right of parties to contract."  1 William Edward Baldwin, Editor. New York Banking Law, Annotated at 268 (1929).  The ability to contract was reflected in at least five places in the 1958 amendments to the Safe Deposit Business statutes.  *See* Letter from Sullivan & Cromwell Attaching NYCHA Report Excerpt, Bill Jacket, L. 1958, Ch. 879, at 10, 13 (excerpting Sections 333 and 335(6)); *id.* at 5-7 (excerpting

---

[2]  Similarly, Section 333, which sets forth in detail which fiduciaries may receive box access (and certain corresponding required procedures), permits access to such individuals "except as otherwise expressly provided by the terms of the lease."  *Id.* § 333(1)-(3).

Sections 3, 14, and 317 and clarifying that businesses could receive any type of property in deposit boxes and could do so "upon terms and conditions to be prescribed," including "so as to remove any possible doubt that considerations of public policy prevent specification of the use"); *see also* Letter from State of New York Banking Department, Bill Jacket, L. 1958, Ch. 879, at 38 (stating the deletion of certain words in the 1958 amendment "will not deprive the safe deposit company of the power to" include those terms in the terms and conditions to be prescribed by the company).

The New York Banking Department further underscored these principles in 1962, stating that the Safe Deposit Business statutes, including Section 335, "<u>do not limit or restrict the operation of safe deposit business in any way,</u> as is obvious from the exception in Section 333, which permits any contractual terms between the parties to be controlling."  Letter from NY Banking Department, Bill Jacket, L. 1962, Ch. 52, at PDF 19 (emphasis added).  Indeed, safe deposit contracts appear to have become widespread by around 1981 at the latest, as the amendment from that year statutorily required each renter to receive at the time of rental "a copy of a safe deposit box rental agreement."  *See* N.Y. Banking Law § 338.

As for the origins of Section 335 as lessor's remedy for non-payment of rent provision, the Attorney General opined that the statute had been enacted to govern situations "where there was a default of rent and no [prior] agreement between the parties as to what action should be taken."  Opinions of the Attorney General, 1911 NY Att'y Gen. Rep. & Op. 3 (1911), at 155.  The amendments that followed likewise filled voids or otherwise were pro-lessor measures, while maintaining sufficient safeguards for lessees.  *See* Letter from Assistant to the New York City Mayor to Counsel for the Governor, Bill Jacket, L. 1958, Ch. 879, at 47 (finding "The bill would not have any substantial effect on . . . the conduct or welfare of [New York City's]

inhabitants"). For example, the 1958 amendments clarified how to treat cash within a drilled box, when to deem items abandoned, and how to dispose of potentially worthless items.  Letter from Sullivan & Cromwell Attaching NYCHA Report Excerpt, Bill Jacket, L. 1958, Ch. 879, at 5-6. The New York Banking Department viewed these changes as "avoid[ing] possible disputes between the lessor and the lessee." Letter from State of New York Banking Department, Bill Jacket, L. 1958, Ch. 879, at 41-42.[3]  There were also a number of other pro-lessor changes made in 1958 to Section 335.[4]

The statutory sections surrounding Section 335 (in Article VIII-a, titled "Safe Deposit Business") that were added in 1958 further support that Section 335 is part of "protective legislation" for safe deposit companies.  *See* Letter from State of New York Banking Department, Bill Jacket, L. 1962, Ch. 52, at PDF 20.  Section 334 was deemed to "protect" lessors when leasing boxes to minors, many of whom were entering the armed forces.  Letter

---

[3]  Section 335(1)(f) requires the lessor to keep worthless papers so as to avoid future disputes between the lessor and lessee if, ultimately, the papers were important. *Id.* Section 335(1)(g) allows for currency in the box to be used to pay for expenses and deems it abandoned after ten years. *Id.* at 42 (remarking that the provision "deprives the lessee of an opportunity of claiming that there was a collector's item in the box").

[4] The new Section 335(1)(b) made it easier for banks to follow procedures for opening and inventorying boxes by only requiring the presence of an employee of the lessor, dropping procedures calling for the presence of an officer or vault manager.  Letter from State of New York Banking Department, Bill Jacket, L. 1958, Ch. 879, at 40. Similarly, a notary no longer was required to remove, inventory, and seal the box, nor was a notary needed to destroy worthless papers.  *Id.* at 40, 41; Letter from Sullivan & Cromwell Attaching NYCHA Report Excerpt, Bill Jacket, L. 1958, Ch. 879, at 5.  The new Section 335(1)(e) allowed for the banking organization to keep the remaining balance from selling the box's contents to pay future costs associated with items not sold, instead of having to immediately turn the property over to the Comptroller. Letter from State of New York Banking Department, Bill Jacket, L. 1958, Ch. 879, at 41.

The amendments also allowed boxes to be drilled after one year of nonpayment rather than two, as well as upon termination of leases for reasons other than nonpayment.  *Id.* at 40-41.  The New York Banking Department noted that "the lessor should not be penalized" if the lessee demonstrates a lack of interest in protecting the property (by failing to remit payment or remove the box contents) and that the lessor should be able to obtain revenue from those boxes from new, non-defaulting customers.  *Id.*; *see also* Letter from the State of New York Banking Department, Bill Jacket, L. 1958, Ch. 879, at 40 (commenting that "it is not fair for the safe deposit company to have to wait two years before it exercises its rights to obtain possession of the box").  The Department noted the company would continue to be subject to a duty of due care for the property that had been in the box.  *Id.* at 41.  The 1958 amendments also clarified, via (now obsolete) Section 335(2), which version of the law applied to non-payment notices that had been sent out prior to the amendment.  *Id.* at 41-42 (noting "one procedure" is set forth so that lessors do "not have to look back to see what was the law in force at the time of the opening of the box").

12

from Sullivan & Cromwell Attaching NYCHA Report Excerpt, Bill Jacket, L. 1958, Ch. 879, at 5; Letter from Sponsor to Governor's Counsel, Bill Jacket, L. 1958, Ch. 879, at 25. The Banking Department likewise observed "this provision would protect the safe deposit company in dealing with a person who may be apparently over the age of 21 but actually under such age." Letter from State of New York Banking Department, Bill Jacket, L. 1958, Ch. 879, at 40 (emphasis added). Also in 1958, the legislature enacted Section 337, which provided clarity around the procedures for selling a safe deposit business to another banking organization, ensuring liability and interruption with business would be minimized. *See* Letter from Sullivan & Cromwell Attaching NYCHA Report Excerpt, Bill Jacket, L. 1958, Ch. 879, at 6 (noting the law clarifies "that it is not necessary to have each lessee execute a new lease with the purchasing institution"); Letter from State of New York Banking Department, Bill Jacket, L. 1958, Ch. 879, at 43 (discharging selling organization of all liability upon transfer, so sales could be facilitated "without the first bank running the risk of having claims made against it for converting the property of the safe deposit boxholders"); *id.* (noting the law prevents businesses from having to terminate leases and, in effect, go out of business for a temporary period).

Even when more narrow amendments were made to Section 335 and the Safe Deposit section, in 1967 and 1981, the latter of which arguably was more focused on the lessee, the considerations of safe deposit companies were carefully balanced and carried the day. In 1967, Section 335 was amended to allow for notices to lessees (regarding non-payment, drilling of box, auction) to be sent via a less secure form of mail (certified mail, with return receipt requested), instead of requiring notice by registered mail. 1967 N.Y. Laws 1085-87. Letters in support of the amendment indicated this change gave the lessor more flexible options for giving notice and allowed for a cheaper alternative to registered mail, without causing any detriment to the box

13

holder.  Letter from New York State Bankers Association, 1967 Bill Jacket, Ch. 378, at PDF 11;

Letter from New York Banking Department, 1967 Bill Jacket, Ch. 378, at PDF 12-13 (stating

that the amendment will permit an economy in an area where economies are highly desirable).

Then, in 1981, despite discussing at length the real-world threats to deposit box owners' property

(from burglaries) and how few deposit box companies carry insurance that may cover their box

holders' property, the ultimately enacted amendment simply required a notice regarding

insurance to be provided on the agreement and rental bills, not any more protective measure.

New York State Assembly, Memorandum in Support of Legislation, Bill Jacket, L. 1981, Ch.

701, at PDF 6-7. The statute even provided, to minimize interruption with the safe deposit

businesses and their standard contracts, that the insurance disclosure could be made on an

attachment to the rental agreement rather than within the rental agreement itself.  *See* 1981 N.Y.

Laws 2014.

     In sum, while there are procedural checkpoints in the statutory text of Section 335 that

could benefit lessees, the statute is plainly designed to benefit lessors (safe deposit businesses),

not lessees.  Certainly, lessees alone are not "the class for whose particular benefit the statute

was enacted." *Flagstar*, 978 N.Y.S.2d at 271 (emphasis added).[5]  Accordingly, because

plaintiffs cannot carry their burden of establishing the first factor, and all three factors must be

met in order to find an implied right of action, this Court could stop its analysis here and hold

that Section 335 does not imply a private right of action for lessees.

---

[5] The *Boutary* court dealt with a similar situation—a law designed to benefit one party that also included statutory requirements providing procedural benefits to the opposing party.  In *Boutary*, taxi drivers sued under a regulation designed to quickly resolve safety-related complaints about drivers through a suspension process. *Boutary v. City of New York*, No. 1:18-CV-3996 (ARR) (JO), 2018 U.S. Dist. LEXIS 216238, at *29-32 (E.D.N.Y. Dec. 26, 2018).  Like Section 335, which was intended to allow the safe deposit company to drill promptly upon non-payment, the regulation in *Boutary* was designed to create remedies for passengers (to promote safety), but also provided drivers procedural safeguards when passengers exercised those remedies (e.g., a hearing).  *See id.* Because, however, taxi passengers were intended beneficiaries, Judge Ross held that the regulation was not intended to provide drivers an implied right of action, and dismissed the claim.  *Id.*

2.    **A Private Right of Action Would Not Promote Section 335's Legislative Purpose.**

Plaintiffs likewise fail the second prong of proving an implied right of action, which requires plaintiffs to establish "(1) what the Legislature was seeking to accomplish in enacting the statute; and (2) whether a private right of action promotes that objective." *Rhodes v. Herz*, 84 A.D.3d 1, 10 (1st Dep't 2011) (citing *Uhr v. E. Greenbush Sch. Dist.*, 94 N.Y.2d 32, 38 (1999)). The analysis looks to the statutory and legislative history to determine the law's purpose. *See id.* (noting it is appropriate to consider "amendments to the statute itself, and the memoranda and/or letters submitted during the legislative process"); *Konkur v. Utica Acad. of Sci. Charter Sch.*, 38 N.Y.3d 38, 41 (2022) (considering a bill jacket and the letters and memoranda sent in support of a statutory amendment in assessing legislative intent).

As discussed above (and as the legislative history shows), Section 335 and the broader safe deposit statutory framework reflect optional privileges and remedies for safe deposit businesses that were designed for the protection of those business, for reduction in the businesses' liability, and for the simplification of what otherwise could be "doubtful and obscure." Implying a private right of action, and thereby imposing greater litigation risk upon deposit box operators, would not promote the legislation's objective. That is especially true where, as here, the legislature paid careful attention to resolving ambiguities in the statute and reducing friction and litigation between lessors and lessees. *See, e.g.*, Letter from State of New York Banking Department, Bill Jacket, L. 1958, Ch. 879, at 41-42 (noting certain amendments were intended to "avoid possible disputes between the lessor and lessee").

Moreover, when there already are contracts between the classes at issue (here, lessors and lessees), finding a private right of action would not promote the legislative purpose because the private right would be duplicative of (and perhaps conflicting with) contractual rights, to which

the lessee plaintiff can already look. *See Milligan v. Geico Gen. Ins. Co.*, CV 16-240, 2017 U.S. Dist. LEXIS 110800, at *15 (E.D.N.Y. July 14, 2017) ("The individuals sought to be protected here—consumers insured by auto insurance companies—are, by definition, parties to a contract and thus have a remedy in the form of an action for breach of contract. Therefore, it is difficult to imagine how the creation of a duplicative private right of action under the statute would 'promote the legislative purpose' underlying the statute."), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 59963 (E.D.N.Y. Mar. 31, 2018), *aff'd sub nom. Milligan v. CCC Info. Servs. Inc.*, 920 F.3d 146 (2d Cir. 2019). As discussed above, the freedom of safe deposit businesses to contract appears on both the face of Section 335 and its neighboring statutory provisions, as well as throughout the legislative history. And at least since the 1981 amendment (which expressly requires the lessee to receive the rental agreement at the time of rental), it appears the vast majority of—if not all—safe deposit relationships are governed by contract. Displacing the bargained-for contractual relationship between the parties with potentially conflicting obligations would be antithetical to Article VIII-A of the New York Banking Law, which was intended to provide certainty to deposit box operators.

In addition, as the New York Court of Appeals held in *Haar* on the second prong of the implied right analysis, even when a statute contains procedural safeguards for the plaintiff class, the potential availability of common-law remedies militates against implying a private right. That is because, in such cases, we can safely infer that the legislature was satisfied with the existing common-law remedies. In *Haar*, for example, doctors sued under New York Public Health Law § 230, which allowed only for "good faith, and without malice" reporting of medical misconduct, alleging that they had been reported in bad faith. *Haar*, 34 N.Y.3d at 228. In refusing to imply a private right of action, the court observed that the possibility of a common-

law remedy undercuts the argument that there is no other method to deter the complained-of activity. *Id.* at 228-29. In *Haar*, the very same allegations could potentially have supported a cause of action for defamation. Similarly, here, the plaintiffs are already bringing claims for conversion, negligence, gross negligence, breach of bailment agreement, and breach of implied bailment agreement—and therefore cannot deny in good faith the availability of common law remedies.

For these reasons, plaintiffs cannot satisfy the second factor of the implied right analysis, and, again, the Court could stop its analysis here.

### 3.    A Private Right of Action Would Be Not Be Consistent with the Legislative Scheme.

An implied private right of action under Section 335 also would not be consistent with the legislative scheme—not with Section 335 itself and not with the broader Banking Law. Under this third element, "the relevant inquiry is whether the private right of action coalesces smoothly with the legislative goal, in particular with its enforcement mechanism, or whether it is completely at odds with the same." *Rhodes*, 84 A.D.3d at 10. "'[R]egardless of its consistency with the basic legislative goal, a private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the overall statutory scheme.'" *Cruz v. TD Bank, N.A.*, 22 N.Y.3d 61, 70-71 (2013) (quoting *Sheehy*, 73 N.Y.2d at 634-35). Many plaintiffs' claims for implied rights fail at this third step. *See, e.g.*, *id.* at 76-77; *Rhodes*, 84 A.D.3d at 13.

As an initial matter, the statutory scheme here, on its face, is concerned with remedies for lessors' rights, not lessees' rights. Section 335(5) states that the provisions of Section 335 "shall not preclude any other remedy by action or otherwise for the enforcement of the <u>claims of the</u> <u>lessor</u> against the person to whom a safe deposit box shall have been let." *See also* N.Y.

17

Banking Law § 335(4) (clarifying lessors that acquire deposit boxes of their predecessors in interest "may have the remedies provided by [Section 335]" as to those predecessor boxes and the contents thereof). By implying a remedy to lessees, plaintiffs' argument confounds the statute's intent to reserve the remedies of lessors instead.[6]

As to lessors' conduct, the New York Banking Law employs a detailed supervisory, enforcement, and penalty structure, including with respect to all banking organizations that provide safe deposit services. *See, e.g.*, N.Y. Banking Law § 9-b (permitting the superintendent or attorney general to maintain an action to restrain unlawful acts); *id.* § 10 (stating that "all banking organizations shall be supervised and regulated through the department"); *id.* § 14 (granting superintendent power to make orders, rules, and regulations, including to define unsafe banking conduct); *id.* § 37 (permitting the superintendent to require "special reports" be made to him); *id.* § 44 (permitting the superintendent to charge any banking organization, including safe deposit companies, penalties of various sizes depending on the nature of the conduct); *id.* § 44-a (permitting penalties of various sizes for unintentional and intentional reporting failures); *id.* § 329 (setting forth, for safe deposit companies, regular and special reporting obligations and corresponding penalties); *id.* § 330 (reiterating ability of superintendent to levy assessments on safe deposit companies); *id.* § 660-74-a (sections organized under title "Misconduct Relating to Banking Organizations"). Similarly, Section 337, which neighbors Section 335, specifically requires "the approval of the superintendent" in order for a safe deposit box business to be sold to another banking organization. N.Y. Banking Law § 337.

---

[6] *See also Cruz*, 22 N.Y.3d at 70 (2013) (noting that the court of appeals has "declined to recognize a private right of action in instances where '[t]he Legislature specifically considered and expressly provided for enforcement mechanisms' in the statute itself" (alteration in original) (citation omitted)).

In addition, the New York Banking Law's drafters over time have been well aware of how to add express rights of action, including express private rights of action, but they did not include such a right within Section 335.  *Compare* N.Y. Banking Law § 335, *with id.* § 6-l ("The attorney general, the superintendent, or any party to a high-cost home loan may enforce the provisions. . . . A private action . . . must be commenced within six years. . . ."); *id.* § 200-b ("An action or special proceeding against a foreign banking corporation may be maintained by a resident of this state for any cause of action."); *id.* § 676 ("No such banking organization . . . shall interpose the defense, in an action for recovery by a depositor of money paid upon an unauthorized signature . . . .").[7]

Accordingly, each time a court has been presented with whether an implied private right of action exists under any section of the New York Banking Law, the court has declined to find one.  *See, e.g.*, *Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 609 (S.D.N.Y. 2013); *Ng v. HSBC Mortg. Corp.*, No. 07-CV-5434 (RRM) (VVP), 2009 U.S. Dist. LEXIS 125711, at *52 (E.D.N.Y. Dec. 15, 2009), *report and recommendation adopted*, No. 07-CV-5434 (RRM)(VVP), 2010 U.S. Dist. LEXIS 40109 (E.D.N.Y. Mar. 10, 2010); *see also Negrin v. Norwest Mortg., Inc.*, 263 A.D.2d 39, 48 (2d Dep't 1999) (recognizing a private right of action under New York's Real Property Law, reasoning, among other things, that the statute at issue "is not a banking law within the [Banking] Superintendent's jurisdiction").  In *Ng*, for example, the court found Section 9-o(2) of the New York Banking Law—which requires mortgage lenders to "provide a separate disclosure form with each application that shall contain [the applicable interest rate

---

[7]  At least two cases view Section 676 as providing an express private cause of action.  *See Caruso v. HSBC Priv. Bank*, 2015 N.Y. Misc. LEXIS 1530, at *8-9 (N.Y. Sup. Ct. Apr. 29, 2015); *Payne v. White*, 101 A.D.  975, 975-976 (3d Dep't 1984).

disclosures]"—did not create a private cause of action. *Ng*, 2009 U.S. Dist. LEXIS 125711, at *52 (contrasting Section 9-o with the private right set forth in Section 6-l of the Banking Law).[8]

In sum, Plaintiffs fare no better under the third factor (should the Court even reach it) than they do under the first or second factors.

## **CONCLUSION**

For these reasons, Chase respectfully requests that the Court decline to find an express or implied private right of action under Section 335 and, accordingly, dismiss Count 1 of the First Amended Complaint—i.e., paragraphs 22-30 of the First Amended Complaint and paragraph ii of the prayer for relief therein.

Dated:  June 29, 2022

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

By: /s/ Harry P. Koulos
Boris Bershteyn
Harry P. Koulos
One Manhattan West
New York, NY 10001
Tel.: (212) 735-3000
Fax: (212) 735-2000
boris.bershteyn@skadden.com
harry.koulos@skadden.com

*Counsel for Defendant*
*JPMorgan Chase Bank, N.A.*

---

[8] While counsel encountered one case that permitted a claim to proceed under a New York Banking Law statute, *see Hutter v. Countrywide Bank, N.A.*, No. 09-cv-10092 (NSR), 2015 U.S. Dist. LEXIS 122882, at *34 (S.D.N.Y. Sept. 14, 2015), that court jumped to analyzing the merits, did not analyze any of the three implied right factors (including no legislative history), and did not seem to appreciate the issue involved an implied right.